# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| Maurice Donald (#N-70687), | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Case No. 17 C 50368 |
| v. | ) |  |
|  | ) | Judge Philip G. Reinhard |
| John Varga, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## ORDER

For the reasons set forth below, defendant's motion for summary judgment [32] is granted. Plaintiff's motion for extension of time to respond to defendant's reply [41] is denied because FED. R. CIV. P. 56 does not provide for a response to the reply. Plaintiff's motion for attorney representation [42] is denied. This case is terminated.

## STATEMENT-OPINION

Plaintiff Maurice Donald, presently in state custody at Dixon Correctional Center, brought this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant nurse Kristina Mershon provided him with inadequate medical care in violation of his constitutional rights.[1] Before the court is defendant's motion for summary judgment [32].

Because plaintiff is proceeding *pro se*, defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. [37]. This notice explained how to respond to defendant's summary judgment motion and Rule 56.1 statement and cautioned plaintiff that the court would deem defendant's factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1.

Plaintiff failed to respond to defendant's undisputed facts. Instead, plaintiff submitted an answer to defendant's motion for summary judgment. [38]. Plaintiff's answer generally disputes defendants' version of events but does not directly respond to the statements of fact with citations to the record. The court thus considers defendant's properly supported statements of fact to which plaintiff did not properly respond, admitted. The court considers plaintiff's answer to defendant's motion but not any contested facts included therein.

---

[1] At the initial screening of plaintiff's case, under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court dismissed plaintiff's state law negligence claim against defendant Nauncan without prejudice and with leave to refile before the Court of Claims and dismissed plaintiff's claims against defendants Varga and Wexford Health Care Services for failure to state a claim. *See* [7]. Defendant Kristina Mershon is the only remaining defendant.

## FACTS

Plaintiff is an inmate in the custody of the Illinois Department of Corrections at Dixon Correctional Center in Dixon, Illinois. (Def. St. of Facts, Dkt. 34, ¶ 1.) Defendant is a nurse practitioner employed by Wexford Health Sources, Inc. at Dixon. (*Id*. at ¶ 2.) She is licensed by the state of Illinois as a board-certified family nurse practitioner and was licensed while treating plaintiff. (*Id*.)

On May 1, 2017, plaintiff was housed in building 26, cell 46. (*Id*. at ¶ 3.) Sometime around noon, plaintiff was climbing down from the top bunk when his left foot went downwards onto an exposed screw. (*Id*. at ¶¶3-4.) Plaintiff pulled his left foot off the screw, asked his cellmate to call correctional staff as he noticed that his foot was bleeding, and an officer came to plaintiff's cell to take plaintiff to the health care unit. (*Id*. at ¶ 4.) At the health care unit plaintiff saw a registered nurse (not defendant) who completed an offender injury report. (*Id*. at ¶ 5.)

The nurse took plaintiff's vital signs and noted that he had an approximately 1-inch wide puncture wound to the bottom of his left foot with minimal bleeding and noted that the puncture wound was not deep. (*Id*. at ¶ 6.) According to the injury report, the nurse cleansed the wound, planned for an x-ray of his foot, and referred plaintiff to defendant for further treatment. (*Id*.)

Later on May 1, 2017, defendant Mershon examined plaintiff's left foot and noted the presence of a puncture wound, and an x-ray of plaintiff's left foot indicated there was no foreign object still in plaintiff's foot. (*Id*. at ¶ 7.) Defendant Mershon prescribed plaintiff a two week "lay-in" so he would not have to go to the yard or work. (*Id*. at ¶ 8.) Defendant Mershon also gave plaintiff a permit so that he could wear shower shoes for two weeks to help keep pressure off his foot while it was healing. (*Id*.) Defendant Mershon also gave plaintiff a two-week low bunk permit so he would not have to climb to a top bunk while his foot healed. (*Id*. at ¶ 9.) She also ordered daily dressing changes for plaintiff's left foot and instructed the nursing staff to use bulky dressings, and to avoid using adhesive dressings. (*Id*.) Defendant also scheduled plaintiff for a return visit in two weeks. (*Id*.) Plaintiff also received a three-day supply of Levaquin 500mg, as a prophylactic antibiotic. (*Id*.)

Defendant did not believe that crutches were medically necessary for plaintiff at the time. (*Id*. at ¶ 10.) He was walking under his own power and reported no difficulties. (*Id*.) However, when plaintiff returned on May 2, 2017, complaining of pain, she provided him with crutches. (*Id* at ¶ 12.) On May 1, 2017, defendant Mershon also did not believe that prescription pain medication was necessary, and plaintiff did not request any. (*Id*. at ¶ 11.)

Plaintiff underwent dressing changes every day for a month. (*Id*. at ¶13.) During his daily dressing changes, the nursing staff would look at plaintiff's foot to see if it was bleeding, or if there was any pus, and would spray his foot with a wound cleaner and tape it back up. (*Id*.)

On May 6, 2017, plaintiff returned to the health care unit and saw a registered nurse for a complaint of pain in his left foot and a request for pain medication. (*Id*. at ¶ 15.) The nurse's note

2

indicates that on that date plaintiff's puncture wound was healing with scant drainage. (*Id.*) The nurse also noted that he was using a set of crutches to ambulate and noted that she planned to continue plaintiff's dressing changes and provided him with Tylenol for his pain. (*Id.*)

On May 8, 2017, plaintiff returned to the health care unit and saw a nurse for a complaint of on-going pain in the bottom of his left foot. (*Id.* at ¶ 16.) According to the May 8, 2017, note, the bottom of plaintiff's left foot showed no redness, no swelling, and no drainage. (*Id.*) The note indicates that plaintiff was using crutches and that plaintiff was provided with a prescription for Ibuprofen 200mg 1-2 tabs, three times per day as needed, for three days to address his complaints of foot pain. (*Id.*)

On May 12, 2017, plaintiff returned to the health care unit and saw a nurse for a complaint of on-going pain in the bottom of his left foot. According to the medical notes, the puncture wound to the bottom of plaintiff's left foot was scabbed over without drainage or odor. (*Id.* at ¶ 17.) Plaintiff returned to the health care unit again on May 13, 2017 and saw a nurse for further treatment of his puncture wound. (*Id* at ¶ 18.) The nurse noted that plaintiff's puncture wound was scabbed, healing well, had scant drainage, and showed no signs or symptoms of infection. (*Id.*) Plaintiff was instructed to avoid putting increased pressure on the site of the puncture. (*Id.*) On May 14, 2017, plaintiff again saw a nurse for further treatment of his puncture wound. (*Id.* at ¶ 19.) At that time, the nurse noted that plaintiff's wound was dry and healing well, and no drainage was noted, and plaintiff continued to use crutches to walk. (*Id.*)

On May 15, 2017, defendant saw plaintiff for a follow-up appointment regarding the puncture wound to the bottom of his left foot and plaintiff reported that the puncture wound in his foot was improving. (*Id.* at ¶ 20.) He also reported some continued pain while walking. (*Id.*) Defendant Mershon examined plaintiff's left foot and noted that the puncture wound was healing well with no surrounding erythema (redness) or open areas. (*Id.* ¶ 21.) She noted that the puncture wound had a scab over it, that plaintiff had full range of motion in his left foot and ankle, and that his circulatory, motor, and sensory functions ("CMS") in his foot were intact. (*Id.*) Plaintiff's foot was not infected at that time. (*Id.*) Defendant assessed plaintiff with a puncture wound that was healing. (*Id.* at ¶ 22.)

At the May 15, 2017, appointment, defendant scheduled plaintiff for a follow-up appointment on May 30, 2017. (*Id.* at ¶ 23.) She also ordered crutches for plaintiff to help him ambulate, a "lay-in" permit so he did not have to go to work or the yard, continued his low-bunk permit for two weeks, and continued his permit for shower shoes for an additional two weeks. (*Id.*) She also gave plaintiff an anti-fungal cream for his foot at that time and instructed him that he needed to put pressure on his foot and wound to avoid creating a permanent problem with his foot. (*Id.* at ¶ 24.) Finally, she ordered a continuation of daily dressing changes, and ordered plaintiff to return if he had any new or worsening symptoms. (*Id.*)

Between May 16, 2017, and May 28, 2017, plaintiff saw medical personnel for further treatment of his puncture wound. (*Id.* at ¶¶ 25, and 27-38.) At each of these medical visits, the medical records note that the wound was closed and there was no drainage, except that on May 22,

3

2017, the nurse noted a "scant" amount of drainage. (*Id*.) Plaintiff continued to receive prescribed pain medications: ibuprofen and Tylenol. (*Id*. at ¶ 27.) At times, plaintiff reported that his pain was decreasing or that it "didn't really hurt." (*Id*. at ¶¶ 29-30.) At other times, plaintiff described his foot as "still tender" or painful when he put pressure on it. (*Id*. at ¶¶ 33-34.) At no time during the period between May 16, 2017, and May 28, 2017, was there any sign of infection. (*Idi. at* ¶¶ 25-38.) During this time-period, plaintiff continued to walk to the commissary and to the law library twice a week. (*Id*. at ¶ 26.)

On May 30, 2017, defendant saw plaintiff for a follow-up appointment regarding the puncture wound to the bottom of his left foot. (*Id*. at ¶39.) At that time, plaintiff reported that he was near full weight bearing on his left foot and was using his crutches sparingly, and that the tenderness in his foot had improved. (*Id*.) Defendant Mershon examined the bottom of plaintiff's left foot and noted that a scab smaller than 0.5 cm remained on the bottom of his left foot. (*Id*. at ¶ 40.) She noted that plaintiff had some tenderness distal to the scab and that there was no discharge from the wound, and that his circulatory, motor, and sensory functions ("CMS") in his left foot were intact. (*Id*.)

On May 30, 2017, defendant discontinued plaintiff's crutches to encourage him to put more weight on his left foot to assist the healing process. (*Id*. at ¶ 42.) She also noted that plaintiff could return to work, continued his low bunk permit for six months and instructed him to follow-up as needed. (*Id*.) As of May 30, 2017, defendant did not notice any signs or symptoms of an infection in the bottom of plaintiff's left foot. (*Id*. at ¶43.) As such, no further antibiotics appeared necessary. (*Id.*)

According to the medical records, plaintiff complained of extreme pain in his foot on June 8, 2017, but there was no sign of infection. (Pl. Answer, Dkt. 38-1, p. 20.) Plaintiff's wound became infected on June 12, 2017, and plaintiff was treated by medical personnel (not defendant) with Keflex, Motrin, and with wound care to clean out the infection. (*Id*. at p. 21.) Treatment continued through June 18, 2017, when the medical records indicate "wound resolved." (*Id*. at p. 27.)

Defendant Mershon did not see plaintiff for any treatment of his left foot between May 30, 2017, and November 26, 2017. (Def. St. of Facts, Dkt. 34, ¶ 44.) On November 26, 2017, she evaluated plaintiff for his request to renew his low bunk permit. (*Id*.) On physical exam, she noted that plaintiff had a scar to the bottom of his foot from a puncture wound and found no medical reason why plaintiff needed a low bunk permit. (*Id*.)

On May 25, 2017, plaintiff filed a grievance regarding the medical care he received for the wound in his foot and for ongoing pain. (Pl. Answer, Dkt. 38-1, pp. 59-61.) Plaintiff's grievance also complained of a foot fungus. (*Id*.) Plaintiff submitted his grievance on May 25, 2017, and he received a response on June 23, 2017. (*Id*.) Plaintiff appealed the response on August 25, 2017, which the warden reviewed, and then plaintiff submitted the grievance to the ARB in Springfield on September 11, 2017. The ARB in Springfield determined that the grievance was not submitted to them in a timely fashion. (*Id*. at p. 62.

4

**SUMMARY JUDGMENT STANDARD**

On summary judgment, defendant argues: (1) plaintiff failed to exhaust his administrative remedies prior to filing suit; (2) plaintiff has failed to establish that he suffered from an objectively serious medical condition; and (3) plaintiff has failed to establish that defendant was deliberately indifferent to his injury. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citation omitted). If the non-moving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be granted." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017) (citation omitted).

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [Local Rule 56.1] statements." *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (third alteration in original) (internal quotation marks omitted); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.").

**ANALYSIS**

    **I.**    **Exhaustion of administrative remedies**

Initially, defendant argues that plaintiff failed to exhaust his administrative remedies prior to filing suit because he did not file a grievance naming defendant. The Prison Litigation Reform Act (PLRA) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "is 'mandatory'" and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

To exhaust administrative remedies, an inmate must use "'all steps that the agency holds out,' and he must 'do[ ] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)); *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

The grievance procedures for Illinois prisoners are set out in 20 Ill. Admin. Code § 504.800, et seq. An Illinois prisoner has sixty days from the date of the incident to submit a grievance. 20 Ill. Admin. Code § 504.810. "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer. . . . The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." 20 Ill. Admin. Code § 504.830(e).

"If, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the (Illinois Department of Corrections) Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the (CAO's) decision." 20 Ill. Admin. Code § 504.850(a). The ARB may interview witnesses and/or examine records at its discretion to address the appeal. § 504.850(c). "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations. The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance." § 504.850(d)-(e).

A prisoner need not specify by name each person against whom he addresses his grievance. *Turley v. Catchings*, No. 03 C 8491, 2004 WL 2092008, at *3 (N.D. Ill. Sep. 15, 2004) (Norgle, J.). The PLRA statute "does not require a prisoner to have named a prospective defendant in his grievance, even if the prospective defendant was known to the prisoner when the grievance was written. A prisoner can 'object intelligibly to some asserted shortcoming' without naming or blaming anyone; he might, for example, simply complain to the warden that he hasn't been fed for two days." *Murray v. Artz*, No. 02 C 8407, 2002 WL 31906464, at *4 (N.D. Ill. Dec. 31, 2002) (Kennelly, J.)

The court recognizes that the Illinois Administrative Code does require inmates to provide "the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). However, the purpose of the requirement is to put prison officials on notice of an issue at the prison; failure to include named defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Kyles v. Beaugard*, No. 15 CV 8895, 2017 WL 4122708, at *8 (N.D. Ill. Sept. 18, 2017) (St. Eve, J.) (*quoting Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)).

6

The record in this case establishes that plaintiff filed a grievance on May 25, 2017, in which he complained about ongoing pain and about the quality of the medical care he received for the injury to the bottom of his foot on May 1, 2017. He also mentions the fact that he had developed a foot fungus in the grievance. Defendant, in her motion, states that plaintiff failed to exhaust his administrative remedies because he failed to name defendant in the (or any) grievance. However, the Seventh Circuit has made clear that a plaintiff need not name the defendant in the grievance, so long as the grievance raises the issue which is the subject of the lawsuit. *Maddox*, 655 F.3d at 722. Plaintiff's May 25, 2017, grievance clearly raises the medical issue that underlies this suit.

Exhaustion is an affirmative defense and the burden is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy, *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (Kendall, J.) (collecting cases). Defendant has not met her burden. Accordingly, the court declines to grant summary judgment on this issue.

## II.   Deliberate indifference to an objectively serious medical condition

Defendant also argues that plaintiff cannot establish that he suffered from an objectively serious medical condition, or that defendant was deliberately indifferent to his medical condition. A prisoner seeking to prove a constitutional violation under § 1983 for denial of medical care must establish "both an objective and a subjective component." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014). First, "the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Second, he must be able to prove that the "defendants were deliberately indifferent to the substantial risk." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

"An objectively serious medical condition is one that 'a physician has diagnosed as needing treatment' or that is so obviously serious 'that even a lay person would easily recognize the necessity for a doctor's attention.'" *McDonald v. Hardy*, 821 F.3d 882, 888–89 (7th Cir. 2016) (quoting *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). "[A] medical condition that significantly affects an individual's daily activities[,] or the existence of chronic and substantial pain" can be an objectively serious medical condition. *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008).

The record establishes that plaintiff suffered a puncture wound to the bottom of his left foot on May 1, 2017. He was taken to the health care unit, examined by defendant, X-rayed, prescribed an antibiotic, a two-week "lay-in" so he would not be required to work or go to the yard, shower shoes to keep pressure off the wound, and a two-week low bunk permit. Defendant also ordered daily dressing changes and scheduled plaintiff for a two-week follow-up appointment. The following day, based on plaintiff's complaints of pain, defendant authorized plaintiff to receive crutches. The record clearly establishes that plaintiff's puncture wound was "diagnosed as needing treatment," *McDonald* 821 F.3d at 888-89, and constituted an objectively serious medical condition. Thus, defendant's argument fails.

However, plaintiff must also establish the second, subjective, component: deliberate indifference. *Pittman ex rel. Hamilton*, 746 F.3d at 775-76. Here, defendant's argument succeeds. The subjective element requires a sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Neither medical malpractice, nor negligence, nor even gross negligence equates with deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). A defendant must have known the plaintiff was suffering a serious medical condition and deliberately taken inadequate steps to address the condition. "That the prisoner received some treatment does not foreclose his deliberate indifference claim", but to be actionable, the treatment received must have been "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition.'" *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

It is well established that medical professionals may choose from "a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008); (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("the Constitution is not a medical code that mandates specific medical treatment.")). Thus, "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008)). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id*. This means that "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409.

The record establishes that defendant prescribed a course of treatment for plaintiff including a prophylactic antibiotic, daily dressing changes, follow-up appointments, a low-bunk permit, a two-week "lay-in," shower shoes, and crutches. She prescribed pain medication on several occasions, and although plaintiff complained of ongoing pain, during the period of May 1, 2017, to May 28, 2017, the medical records establish that plaintiff's level of pain seem to have been improving. Defendant saw plaintiff on three occasions: May 1, 2017, May 15, 2017, and May 30, 2017. On May 15, 2017, she continued plaintiff's treatment and prescriptions for dressing changes, "lay-in," low-bunk permit, shower shoes, and crutches. She also gave him a medication for the foot fungus he had contracted. She also scheduled him for a follow-up appointment on May 30, 2017.

On May 30, 2017, defendant examined and treated plaintiff, finding that the wound was scabbed over and healing. It had shrunk to .5 centimeters and showed no signs of infection. Plaintiff reported that the pain had improved, and he was near full weight bearing on the foot. She discontinued his crutches and authorized him to return to work. While plaintiff complained of pain in the wound on June 8, 2017 and developed an infection in the wound and saw medical personnel on June 12, 2017, he received medical treatment from non-defendant medical personnel and the medical records indicate that the infection was resolved by June 18, 2017. After May 30, 2017, defendant did not see plaintiff again until November 26, 2017, when he requested a renewal of his low-bunk permit.

The court looks to the "totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). Based on the totality of the care provided to plaintiff in the month after his injury, no reasonable jury could find that defendant Mershon was deliberately indifferent to plaintiff's serious medical condition.

Plaintiff, in his response, attempts to take issue with the medical records, alleging that they have been falsified (Dkt. 38, pp. 2-3.) Plaintiff's allegation of falsification is based on largely unsupported argument, but in one instance he asserts that that evidence of the falsification of the record involves the fact that the medical record has entries in two different handwritings. (*Id*. at p. 3, ¶ E.) Plaintiff's assertions of falsification of the medical records in this case are argumentative and conclusory, and the court finds that the presence of two different handwritings does not establish falsification, it merely shows that two different people wrote in the medical note. Regardless, plaintiff's contention that one or a few of the medical records are inaccurate does not change the fact that the totality of the care provided to plaintiff by defendant and other medical personnel belies any claim of deliberate indifference. Accordingly, defendant Mershon's motion for summary judgment is granted.

### III. Plaintiff's motions and correspondence

Plaintiff has filed a motion for leave to file a response to defendant's reply. [41]. The motion is denied. The Federal Rules of Civil Procedure do not provide for briefing beyond the reply to the response to the motion. The court finds that the record is clear and any response by plaintiff would not change the outcome of the case.

Plaintiff's renewed motion for appointment of counsel [42] is likewise denied.[2] "There is no right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but the court may request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). In deciding whether to recruit counsel, the court must engage in a two-step analysis: (1) has the plaintiff made a reasonable attempt to retain counsel on his own or been effectively precluded from doing so; and, if so, (2) given the factual and legal complexity of the case, does the plaintiff appear competent to litigate the matter himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (*en banc*). The court finds that plaintiff is unsuccessful at this stage of the litigation "not because his claim [is] complex or beyond his capabilities to litigate, but because he cannot establish that…defendant 'knew of a substantial risk of harm to [his health] and disregarded the risk.'" *DaSilva v. Rymarkiewicz*, __ Fed. App'x. __, 2019 WL 2486700, at * 3 (7th Cir. 2019). And plaintiff cannot establish a "reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659 (emphasis omitted).

---

[2] The court denied plaintiff's first motion for attorney representation at the screening stage. *See* [7]. There, the court found that based on plaintiff's filings, he appeared capable and pleaded no mental or physical illness that might have prevented him from proceeding on his own. *Id*.

Finally, the court acknowledges plaintiff's correspondence regarding issues he may have with monies taken from his trust fund account but finds that the issue is unrelated to the underlying claim in this case and plaintiff must avail himself of the grievance system available at Dixon Correctional Center to resolve any issues he may have regarding monies taken from his trust fund account.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [32] is granted. Plaintiff's deliberate indifference to medical needs claim is dismissed with prejudice. Plaintiff's motions [41] and [42] are denied for the reasons given in this opinion. Given that there are no remaining claims or defendants in this action, the case is dismissed in its entirety. Final judgment shall enter.

If plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if plaintiff wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: 06/19/2019                    ENTER:

*Philip G. Reinhard*
United States District Court Judge

Docketing to Mail Notices. (LC)